## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTICT OF MISSOURI

**KIA MACKEY**, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

**BELDEN, INC.**,

    Defendant.

Case No. 4:21-cv-00149- JAR

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 5

II.   FACTUAL & PROCEDURAL BACKGROUND ............................................ 5

    A.   The Litigation ............................................................................................ 5

    B.   Mediation and the Settlement. ................................................................... 6

III.  SETTLEMENT BENEFITS .............................................................................. 7

    A.   The Settlement Class. ................................................................................ 7

    B.   Monetary Benefits. .................................................................................... 8

    1.   Reimbursements for Out-of-Pocket Expenses and Fees for Credit Reports, Credit Monitoring, or Other Identity Theft Insurance Products............................................. 8

    2.   Reimbursement for Lost Time. .................................................................. 8

    C.   Non-Monetary Benefits. ............................................................................ 9

    D.   Aggregate Cap. .......................................................................................... 9

IV.   THE NOTICE PROGRAM AND THE SETTLEMENT CLASS'S REACTION.............. 10

V.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE. ............................ 12

    A.   Legal Standard........................................................................................... 12

    B.   The Settlement is Fair, Reasonable, and Adequate. .................................. 13

    1.   The Settlement Agreement Satisfies Federal Rule of Civil Procedure 23(e)............ 13

    a.   Plaintiffs and Counsel Adequately Represented the Class.................................. 13

    b.    The Settlement is the Product of Arm's-Length Negotiations. ...................... 14

1

    c.   The Relief Provided to the Settlement Class is More than Adequate, Particularly Considering the Uncertainty of Trial. ........................................................................ 15

    i.   The Costs, Risks, and Delay of Trial and Appeal. ................................................. 16

    ii.   The Effectiveness of the Distribution Method. .................................................... 17

    iii.   The Award of Attorney's Fees. .......................................................................... 17

    iv.   Additional Agreements Required to be Identified. .............................................. 18

    d.   The Settlement Treats Class Members Equally ................................................... 18

2.   The Van Horn Factors Weigh in Favor of Final Approval. ..................................... 18

    a.   The Strength of Plaintiffs' Case Favors the Approval of the Settlement. ........... 18

    b.   The Defendant's Financial Condition Supports Final Approval. .................... 19

    c.   The Complexity and Expense of Further Litigation Merits Final Approval. ....... 19

    d.   The Reaction of the Class to the Settlement. ...................................................... 19

VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED. ................................................. 20

VII.   THE NOTICE PROGRAM ADEQUATELY APPRISED CLASS MEMBERS ............... 22

VIII.   CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Baksh et al. v. IvyRehab Network, Inc.*,

   No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) ........................................................ 15

*Barfield v. Sho-Me Power Elec. Co-op.*,

   No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013) ................................ 20

*Corona v. Sony Pictures Entmt., Inc.*,

   No. 2:14-cv-9600 (C.D. Cal. Apr. 12, 2016) ............................................................ 19

*Elliot v. Sperry Rand Corp.*,

   680 F.2d 1225 (8th Cir. 1982) ............................................................................ 12

*In re Anthem, Inc. Data Breach Litig.*,

   327 F.R.D. 299 (N.D. Cal. 2018) .......................................................................... 19

*In re BankAmerica Corp. Sec. Litig.*,

   350 F.3d 747 (8th Cir. 2003) .............................................................................. 12

*In re Brinker Data Incident Litig.*,

   No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................... 20

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,

   No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) ................................ 19

*In re Target Corp. Customer Data Sec. Breach Litig.*,

   892 F.3d 968 (8th Cir. 2018) ........................................................................ 14, 15

*In re Target Corp. Customer Data Sec. Breach Litig.*,

   No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir.

   2018) ....................................................................................................... 19

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,

   716 F.3d 1057 (8th Cir. 2013) ....................................................................... 11, 13

*In re Zappos.com, Inc. Sec. Breach Litig.*,

   No. 3:12-cv-00325 (D. Nev.) ............................................................................. 14

*In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*,

   No. 1:17-cv-01035-WMR (N.D. Ga.) ..................................................................... 15

*Jones v. NovaStar Fin., Inc.*,
    257 F.R.D. 181 (W.D. Mo. 2009) ........................................................................ 20

*Lee v. Anthem Inc. Cos.*,
    2015 WL 3645208 (E.D. Mo. June 10, 2015) ...................................................... 11

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*,
    921 F.2d 1371 (8th Cir. 1990) .............................................................................. 12

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) ................................................................................ 13

*Paxton v. Union Nat. Bank*,
    688 F.2d 552 (8th Cir. 1982) .......................................................................... 12, 20

*Pollard v. Remington Arms Company, LLC*,
    320 F.R.D. 198 (W.D. Mo. March 14, 2017) ....................................................... 14

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*,
    678 F.3d 640 (8th Cir. 2012) ................................................................................ 11

*Sackin v. TransPerfect Global, Inc.*,
    No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) ............................................ 15

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ................................................ 11, 17

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993) ..................................................................... 13

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ..................................................................... 12

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

## **Treatises**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) .......... 16

Newberg on Class Actions § 11.41 ............................................................................ 13

Newberg on Class Actions § 13:52 (5th ed.) ............................................................ 18

## I.    INTRODUCTION

On October 26, 2022, this Court preliminarily approved a proposed class action settlement[1] between Plaintiff Kia Mackey, Plaintiff Anand Edke [2] (collectively, "Plaintiffs") on the one hand and Defendant Belden, Inc. ("Belden" or "Defendant") on the other hand. Now, having received preliminarily approval, Plaintiffs seek final approval of the class action settlement. The Settlement is fair, reasonable, and adequate; notice was given by the best practicable means under the circumstances; and the Settlement has received a positive reaction from the Settlement Class. Accordingly, this Court should GRANT final approval of the class action settlement.

## II.    FACTUAL & PROCEDURAL BACKGROUND [3]

### A.  The Litigation

This case arises from a cyberattack on Belden's network servers in November 2020 in which an unauthorized third-party unlawfully accessed the personally identifiable information ("PII") and the protected health information ("PHI") of Plaintiffs and the Class (the "Cyberattack"). After the Cyberattack, Belden notified those affected, which included Plaintiffs and the Class.

---

[1] Unless otherwise defined, all capitalized terms shall have the meaning set forth in the Settlement Agreement (ECF No. 57-1). Citations to the Settlement Agreement will be abbreviated as follows – "SA, ¶ __."

[2] A parallel lawsuit to the *Mackey* Action was filed by Plaintiff Anand Edke against Belden, Inc., alleging similar claims for relief. *See Anand Edke v. Belden, Inc.*, No. 4:21-cv-955-MTS (E.D. Mo.). To maximize recovery for Plaintiffs and the Class, Plaintiffs and their respective counsel worked to coordinate the two actions, jointly prosecute the actions through the *Mackey* Action, and secure a settlement on behalf of Plaintiffs and the Class.

[3] In the interest of brevity, Plaintiffs briefly recount the factual and procedural background of the case. An in-depth recitation of the factual and procedural background may be found in Plaintiffs' Suggestions in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs (ECF No. 62) and the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (ECF No. 57).

Seeking to redress the harms Plaintiffs allege were caused by the Cyberattack, Plaintiffs filed class action lawsuits against Belden. On February 4, 2021, Plaintiff Mackey filed her complaint against Belden in the United States District Court for the Eastern District of Missouri in an action styled *Kia Mackey v. Belden Inc.*, No. 4:21-cv-00149 (the "*Mackey* Action"). On January 7, 2021, Plaintiff Edke filed a class action lawsuit in the Circuit Court of Cook County, Illinois, in an action styled *Anand Edke v. Belden Inc.*, No. 2021-CH-00047 (the "*Edke* Action"), which was ultimately removed and transferred to the Eastern District of Missouri.  On January 21, 2022, a joint motion to stay the *Edke* Action was granted, which allowed both Plaintiffs to collectively work to prosecute their claims and negotiate a settlement through the *Mackey* Action.

**B. Mediation and the Settlement.**

On August 25, 2022, a Settlement Agreement was entered into between Plaintiffs on the one hand and Defendant on the other. The Settlement Agreement was the result of good faith, arm's-length settlement negotiations, including a full-day (going late into the evening), in-person mediation session on May 9, 2022, aided by experienced mediator, Jeffrey Grubman, Esq. of JAMS. *See* Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement ("Federman Decl."), ¶ 5.[4] Although the Parties did not agree on every term of the Settlement at the mediation, significant progress was made. Federman Decl., ¶ 5. Following the mediation, the Parties continued to negotiate in good faith, and ultimately reached an agreement to settle the *Edke* Action and the *Mackey* Action, resulting in the formation of the Settlement Agreement (ECF No. 57-1). Federman Decl., ¶ 5.

The Settlement Agreement was preliminarily approved by this Court on October 26, 2022 (ECF No. 59). In the Court's Order the Court: (i) preliminarily approved the Settlement Agreement

---

[4] Filed concurrently herewith.

and preliminarily found that it satisfied the criteria for preliminary approval; (ii) approved the Notice Plan; (iii) and preliminarily certified the proposed class for settlement purposes. ECF No. 59. The Court also provisionally appointed Plaintiffs as Representative Plaintiffs and provisionally appointed William B. Federman of Federman & Sherwood and M. Anderson Berry of Clayeo C. Arnold, a Professional Law Corporation as Class Counsel. ECF No. 59.

Since receiving preliminary approval, Class Counsel filed a Motion for Attorneys' Fees, Reimbursement of Litigation Expenses and Service Awards to Plaintiffs (ECF No. 61) for their hours of work and dedication they expended towards resolving this case. Indeed, the Settlement is proof that their hard work inured to the benefit of the Class.

Now, having received preliminary approval, it is the opinion of Representative Plaintiffs and Class Counsel that the settlement is fair, adequate, and reasonable and merits final approval.

## III.    SETTLEMENT BENEFITS

### A. The Settlement Class.

The Court's Preliminary Approval Order preliminarily certified, for settlement purposes only, a Class defined as follows:

> all individuals residing in the United States to whom Belden or its authorized representative sent a notice concerning the Cyberattack. The Settlement Class specifically excludes: (i) Belden and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or Magistrate Judge, and their staffs, assigned to this matter; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Cyberattack or who pleads *nolo contendere* to any such charge.

ECF No. 59; SA, ¶ 1.22.

**B.  Monetary Benefits.**

The Settlement provides significant monetary benefits to the Settlement Class. SA, ¶¶ 2.1, 2.3. Settlement Class Members may receive a reimbursement of up to $5,000.00 for any combination of: (i) out-of-pocket expenses fairly traceable to the Cyberattack; (ii) lost time reasonably expended responding to the Cyberattack; and (iii) fees for credit reports, credit monitoring, or other identity theft insurance products purchased between November 24, 2020, and October 26, 2022. SA, ¶ 2.1.

> **1.  Reimbursements for Out-of-Pocket Expenses and Fees for Credit Reports, Credit Monitoring, or Other Identity Theft Insurance Products.**

Settlement Class Members are eligible to receive unreimbursed out-of-pocket expenses fairly traceable to the Cyberattack, including: (i) out-of-pocket losses resulting from fraud or misuse of Settlement Class Members' Personal Information; (ii) bank fees; (iii) phone charges, (iv) data charges; (v) postage or gasoline for local travel; and (vi) fees for credit reports, credit monitoring, or other identity theft insurance product purchased between November 24, 2020 and the date of the Preliminary Approval of the Settlement. SA, ¶¶ 2.1(i–ii).  To claim these reimbursements Settlement Class Members need only attest to the expense and provide supporting documentation. SA, ¶¶ 2.1(i–ii).

> **2.  Reimbursement for Lost Time.**

In addition to reimbursement for the expenses described above, Settlement Class Members are also eligible to submit claims for lost time they reasonably expended responding to the Cyberattack. SA, ¶ 2.3(iii). Settlement Class Members may claim up to five (5) hours of time compensated at a rate of $21.37 per hour (a total of $106.85). SA, ¶ 2.3(iii). To receive this benefit, Settlement Class Members need only attest to the time spent and provide a brief description showing the time spent was fairly traceable to the Cyberattack. SA, ¶ 2.3(iii).

**C. Non-Monetary Benefits.**

All Settlement Class are also eligible to receive identity protection and credit monitoring services for forty-two (42) months regardless of whether or not they are eligible for monetary recovery under the Settlement. SA, ¶ 2.2. Settlement Class Members who submit Approved Claims for monitoring and protection services and who have already obtained monitoring and protection services through Belden which have not yet expired will receive an additional forty-two (42) months of monitoring and protection services. SA, ¶ 2.2.1.

Belden also committed to adopt, implement, or continue various business practices to enhance or otherwise maintain its security posture for three (3) years. SA, ¶ 3.1. All costs associated with implementing the Business Practice Commitments will be borne by Belden, completely separate and apart from the Aggregate Cap (defined below). SA, ¶ 3.2.

**D. Aggregate Cap.**

The aggregate amount of any Approved Claims is subject to a generous Aggregate Cap of $865,000. SA, ¶ 2.4. The Aggregate Cap will also be used to pay for the Costs of Settlement Administration. SA, ¶ 2.4. If the Aggregate Cap were to be exceeded, Approved Claims would be reduced on a *pro rata* basis. SA, ¶ 2.4. However, based on the near final totals provided by the Settlement Administrator, all valid claims will likely be paid in full. Declaration of Frank Cordova Re: Notice Procedures ("KCC Decl."), ¶ 11. [5]

It is important to note that any award of attorney's fees, litigation costs and expenses, and services awards will ***not*** affect the relief provided to the Settlement Class and will be paid entirely separate and apart from the Aggregate Cap. SA, ¶¶ 9.2–9.3. Plaintiff's request for Attorney's Fees, Service Awards, and reimbursement of litigation expenses is fully briefed in ECF No. 62.

---

[5] Attached to the Federman Declaration as Exhibit 1.

## IV.    THE NOTICE PROGRAM AND THE SETTLEMENT CLASS'S REACTION

After the Preliminary Approval Order was entered, the following occurred: (i) within thirty (30) days of the Preliminary Approval Order, the Settlement Administrator caused the Short Notice to be disseminated to the Settlement Class via direct mail (SA, ¶ 5.2.1; KCC Decl., ¶ 6); (ii) the Settlement Administrator established a settlement website,[6] which made available copies of the Short Notice, Long Notice, Claim Form, and Settlement Agreement (among other case filings) (SA, ¶ 5.2.2; KCC Decl., ¶ 9); and (iii)  the Settlement Administrator established a toll-free telephone number with a live operator to answer questions about the Settlement (SA, ¶ 5.2.2; KCC Decl., ¶  10). What is more, the Settlement was also featured on *topclassactions.com*, adding an additional form of notice to the Notice Program already preliminarily approved by the Court.[7]

In total, 15,334 Short Form/Postcard Notices ("Notice") were directly mailed to Settlement Class Members. KCC Decl., ¶¶ 6–8. Approximately 59 Notices were returned by the USPS with a forwarding address. KCC Decl., ¶ 7. The Settlement Administrator immediately caused these Notices to be re-mailed to the forwarding addresses supplied by the USPS. KCC Decl., ¶ 7. Additionally, 1,776 Notices were returned with undeliverable addresses. KCC Decl., ¶ 8. Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Notices and was able to find updated addresses for 388 Class Members. KCC Decl., ¶ 8. The Settlement Administrator promptly re-mailed Notices to the found new addresses. KCC Decl., ¶ 8.

Further, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, the Settlement Administrator compiled a CD-ROM containing the following documents:

---

[6] *See* https://www.beldendatabreachsettlement.com/.

[7] The website article is attached to the Federman Declaration as Exhibit 2.

Class Action Complaint; Amended Class Action Complaint; Response to Amended Class Action Complaint; Edke Complaint; Motion for Preliminary Approval; Proposed Preliminary Approval Order; Memorandum of Points and Authorities in Support of Motion for Preliminary Approval; Settlement Agreement; Long Form Notice; Postcard Notice; Claim Form; Declaration of Joel Naumoff; Declaration of Brian Anderson; Declaration of William B. Federman; Federman & Sherwood Resume; KCC Resume; Proposed Final Judgement; Estimated Class Member Data; Proposed Order re Preliminary Approval Hearing; and a cover letter (collectively, the "CAFA Notice Packet"). KCC Decl., ¶¶ 2–4. The CAFA Notice Packets were mailed to the U.S. Attorney General, the Attorneys General of each of the 50 states and the District of Columbia. KCC Decl., ¶ 3.

It can be deduced from the Settlement Class's response that the Settlement was well-received. The deadline to submit a claim was February 8, 2023. KCC Decl., ¶ 11. The Settlement Administrator initially received 67,941 claim forms. KCC Decl., ¶ 14. Due to the high volume of claims received in comparison to the total number of class members (15,334) the Settlement Administrator undertook a fraud analysis,[8] which reduced the number of claims to 356 valid claims and 148 deficient claims.[9] KCC Decl., ¶¶ 11, 14. The claims administration has received a favorable claims rate of 2.3% thus far, which is expected to increase depending on the responses received from deficient claims. Federman Decl., ¶ 22; KCC Decl., ¶¶ 11–13.[10]

---

[8] The amount of fraud was likely due to the settlement being featured on *topclassactions.com*. Federman Decl., ¶ 17 at fn. 5.

[9] A total of 324 Class Members took advantage of the credit monitoring and identity theft protection services offered. KCC Decl., ¶ 12.

[10] This was calculated by dividing the 356 valid claims by the 15,334 total class members. The number of valid claims will likely increase (depending on the responses received from the 148 deficient claim forms). KCC Decl., ¶ 11.

Additionally, the deadline to object to the Settlement or request exclusion from the Settlement expired on January 24, 2023. Federman Decl., ¶ 21; KCC Decl., ¶¶ 15–16. However, there was only *one* request for exclusion and there were zero objections to the Settlement. Federman Decl., ¶ 21; KCC Decl., ¶¶ 15–16. Overall, the reaction of the Settlement Class was remarkably positive. Federman Decl., ¶ 24.

## V.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

### A.  Legal Standard.

In approving a class action settlement, a Court must consider whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012). To determine if a class action settlement is fair, reasonable, and adequate, courts in the Eighth Circuit look to the four factors delineated in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (the "Van Horn factors")[11], as well as the factors listed in Federal Rule of Civil Procedure 23(e)(2).[12] *See also Lee v. Anthem Inc. Cos.*, 2015 WL 3645208, at *1 (E.D. Mo. June 10, 2015) (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013). Ultimately, approval of a proposed class action settlement is within "the sound discretion of the trial judge." *In re*

---

[11] The four Van Horn factors are: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Van Horn*, 840 F.2d at 607.

[12] Under Rule 23(e)(2), a Court may grant final approval only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 752 (8th Cir. 2003) (quoting *Elliot v. Sperry Rand Corp.*, 680 F.2d 1225, 1227 (8th Cir. 1982)). However, there is a strong judicial policy in favor of resolving litigation before trial, especially in class actions where substantial judicial resources can be conserved. *See Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements."); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.").

**B.  The Settlement is Fair, Reasonable, and Adequate.**

**1.  The Settlement Agreement Satisfies Federal Rule of Civil Procedure 23(e).**

**a.  Plaintiffs and Counsel Adequately Represented the Class.**

The adequacy inquiry examines whether (1) the class representatives have common interests with the members of the class and (2) whether class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982). Here, the Representative Plaintiffs, like all Settlement Class Members, had certain of their PII potentially accessed in the same Cyberattack, providing them with common interests with the Class. Moreover, they ably represented the Class by maintaining contact with counsel, assisting in the investigation of the case, producing relevant documents, reviewing the material terms of the Settlement Agreement, remaining available for consultation throughout settlement negotiations, answering counsel's many questions, and reviewing the terms of the Settlement Agreement.

Further, Proposed Class Counsel, too, have vigorously pursued the interests of the Class by securing a Settlement that brings immediate benefits to Settlement Class Members while avoiding the risks of continued litigation. Federman Decl., ¶¶ 6–8. Their efforts resulted in the

excellent Settlement before the Court, guaranteeing relief to Settlement Class that compares favorably to that approved in other data breach cases (discussed in Section V(B)(1)(c), *infra*). As such, this factor warrants final approval.

### b. The Settlement is the Product of Arm's-Length Negotiations.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A Settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063).

This Settlement was the product of extensive arm's-length negotiations. Before attending mediation, Plaintiffs obtained a damages expert, engaged in discovery, and prepared a detailed term sheet. Federman Decl., ¶¶ 5–7. As a result, Class Counsel were well-informed of the facts and issues concerning liability, damages, and the relative strengths and weaknesses of each side's litigation position. Federman Decl., ¶ 6. The Settlement was only reached after a full-day mediation session with experienced mediator, Jeffrey Grubman, Esq. of JAMS, and the continued good-faith negotiations of counsel afterwards. Federman Decl., ¶¶ 5–6. Plaintiffs' counsel and Defendant's counsel, who are both highly experienced and capable, vigorously advocated their clients' positions throughout the Settlement negotiations. Federman Decl., ¶¶ 5–8. In light of the non-collusive nature and procedural fairness of the Settlement, the presumption of fairness, adequacy, and reasonableness should attach. *See White v. Nat'l Football League*, 836 F. Supp. 1458 (D. Minn. Aug. 19, 1993) (finding no evidence of collusion and concluding settlement was the result of arm's length negotiations); *Pollard v. Remington Arms*

*Company, LLC*, 320 F.R.D. 198, 220 (W.D. Mo. March 14, 2017) (finding a settlement reached after extensive investigation and discovery by class counsel was reached in good faith).

> c. **The Relief Provided to the Settlement Class is More than Adequate, Particularly Considering the Uncertainty of Trial.**

As outlined in Section III(B), *infra*, the Settlement guarantees Settlement Class Members both monetary relief and protection against future cyberattacks. SA, ¶¶ 2.1–2.2, 3.1. All Settlement Class Members are automatically eligible to receive forty-two (42) months of credit monitoring services regardless of if they suffered any monetary damages. SA, ¶ 2.2. Belden will also make meaningful security enhancements to protect PII maintained on its network. SA, ¶¶ 3.1–3.2. Such protections will help ensure that Plaintiffs' and Class Members' PII is protected both presently and in the future. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974 n.6, 978 (8th Cir. 2018) (finding injunctive relief in the form of data security measures "has value to all class members," and the district court properly considered non-monetary relief when weighing the merits of the plaintiff's case against the terms of the settlement).

Settlement Class Members also have the opportunity to take advantage of significant monetary benefits. Settlement Class Members may receive a reimbursement for up to five (5) hours of time spent addressing the ramifications of the Cyberattack, a total possible benefit of $106.85. SA, ¶ 2.1(iii). This is in addition to the reimbursement Settlement Class Members may receive for out-of-pocket expenses. SA, ¶ 2.1. Overall, Settlement Class Members are eligible to receive up to $5,000.00 in monetary benefits. SA, ¶ 2.1. Accordingly, this factor weighs heavily in favor of final approval.

These Settlement benefits compare very favorably to those of other data breach class action settlements approved by courts. *See, e.g., In re Zappos.com, Inc. Sec. Breach Litig.*, No. 3:12-cv-00325 (D. Nev.) (ECF No. 418 at 2) (data breach settlement provided "10% coupon" for Zappos

goods); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d at 979 (affirming approval of settlement that established a common fund of $10 million for 100 million class members where the benefits provided were reimbursement for documented losses and pro rata distribution of residual funds); *Baksh et al. v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (ECF No. 49) (approving data breach settlement with common fund of only $150,000 for a class of 121,160 members and providing claimants with up to $75 in out-of-pocket expense reimbursement, $20 for lost time, and 1 year of credit monitoring); *Sackin v. TransPerfect Global, Inc.*, No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) (ECF Nos. 63, 74) (approving settlement providing only 3 years of identity theft protection and reimbursement of out-of-pocket expenses); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-01035-WMR (N.D. Ga.) (ECF Nos. 187-1, 190) (approving settlement that provided only reimbursements for out-of-pocket losses and time spent).The monetary and non-monetary relief provided by this Settlement is meaningful and certainly adequate to release Settlement Class Members' claims related to the Cyberattack. *See* Federman Decl., ¶¶ 3–4, 7–8.

### i. The Costs, Risks, and Delay of Trial and Appeal.

The risks of proceeding to trial were substantial. If this case were to continue, Defendant would vigorously contest the merits of Plaintiffs' claims through motion practice and would resist class certification. A defeat on a dispositive motion or a failure to obtain class certification would deprive class members of any recovery. It is extremely favorable to Settlement Class Members to have a guaranteed recovery of this magnitude, rather than take a substantial risk by going to trial. Even if Plaintiffs did win at trial, Plaintiffs would have to survive any appeal(s) Defendant will inevitably file. Protracted litigation is a risky and expensive endeavor Plaintiffs are able to avoid by reaching this Settlement with Defendant. Thus, the Settlement's "acceptance and approval [is]

preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002).

### ii.    The Effectiveness of the Distribution Method.

Likewise, the proposed Settlement distribution is also fair, adequate, and reasonable. Pursuant to the Settlement Agreement, Settlement Class Member were easily able to make a claim by submitting a claim form to the Settlement Administrator. SA, at Exhibits A–B. The Settlement Administrator was responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. SA, ¶¶ 2.3, 10.1–10.2. After the Settlement is approved, the Settlement Administrator will also be responsible for processing and transmitting payments to Settlement Class Members. SA, ¶¶ 10.1–10.2. These payments will occur within sixty (60) days of the Effective Date or within thirty (30) days after the Claims Administrator has received all claims and made a final determination as to the amount to be paid for all Approved Claims, whichever is latest. SA, ¶ 10.2. Hence, the Settlement provides for effective processing and distribution of relief.

### iii.    The Award of Attorney's Fees.

On January 9, 2023, Plaintiffs moved for an award of attorney's fees and costs, as well as service awards for Plaintiffs (ECF No. 61). As shown extensively in the Suggestions in Support of that motion (ECF No. 62), the requested attorney's fees, costs, and service awards are fair and reasonable, and fall within the range of awards approved by courts in the Eighth Circuit. Moreover, the Parties did not negotiate the payment of attorney's fees, costs, expenses, and service awards until after the substantive terms of the Settlement were agreed upon. SA, ¶ 9.1.  No Class Members objected to the requested awards. Federman Decl., ¶ 21. This is likely due to the fact that these awards (if approved by the Court) will in no way impact the relief provided to the Settlement Class

17

because they will be paid separate and apart from the relief provided under the Settlement Agreement. SA, ¶¶ 9.2–9.3.

### iv.    *Additional Agreements Required to be Identified.*

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

### d.  The Settlement Treats Class Members Equally.

The proposed Settlement does not improperly discriminate between any segments of the Settlement Class, as all Settlement Class Members are entitled to receive the same relief respectively. *See* SA, ¶¶ 2.1–2.2. All Settlement Class Members were eligible to make a claim for the same amount of (i) out-of-pocket expenses; (ii) fees for credit reports, credit monitoring, or other identity theft insurance; and (iii) reimbursement for lost time. SA, ¶ 2.1. Additionally, all Settlement Class Members were eligible to receive credit monitoring services. SA, ¶ 2.2. Any difference in recovery will be based purely on the actual expenses they have incurred and time they have spent to mitigate the effects of the Cyberattack. Thus, the settlement does not unfairly benefit the Class Representatives or any particular Settlement Class Member.

### 2.  The Van Horn Factors Weigh in Favor of Final Approval.

### a.  The Strength of Plaintiffs' Case Favors the Approval of the Settlement.

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607. Here, the Settlement Agreement is fair and reasonable in light of Plaintiffs' alleged claims and damages and Defendant's defenses. Although Plaintiffs and Class Counsel believe that the claims presented in this litigation are meritorious, they understand that the risks surrounding class certification and a trial are considerable. Federman Decl., ¶ 7.

Throughout the negotiation process, Defendant has steadfastly denied Plaintiffs' allegations, and Defendant continues to deny any wrongdoing or liability. Plaintiffs would face an uphill battle if litigation were to continue, and success would be far from certain. Federman Decl., ¶ 7. Therefore, this factor weighs in favor of final approval.

### b.  The Defendant's Financial Condition Supports Final Approval.

Defendant has the financial wherewithal to satisfy the financial terms of the Settlement Agreement.

### c.  The Complexity and Expense of Further Litigation Merits Final Approval.

"Class action litigation is inherently complex, and complexity makes litigation especially costly in terms of both time and money." Newberg on Class Actions § 13:52 (5th ed.) (footnote omitted). Here, continued litigation of this action would be extremely expensive and time consuming because the case presents complex legal and factual issues. The next steps in this case would entail costly and time-consuming motions for class certification and summary judgment. If Defendant was to prevail at the class certification or summary judgment stages, then it could reduce recoverable damages for the Settlement Class or eliminate them *entirely*. Even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. The Settlement Agreement provides a monetary benefit to the Settlement Class in a timely fashion that minimizes any significant commitment of future resources by the Parties and the Court.

### d.  The Reaction of the Class to the Settlement.

As mentioned above, the Settlement was well-received by the Settlement Class. Both of the named Plaintiffs fully support the Settlement Agreement, and there was only one request for exclusion and no objections to the Settlement Agreement.

Furthermore, the claims rate – 2.3%[13] – is well-above the claims rate of other data breach class actions that have been approved. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval of settlement in data breach class action with 1.8% claims rate); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.,* No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (approving claims rate of 0.25%); *Corona v. Sony Pictures Entmt., Inc*., No. 2:14-cv-9600 (C.D. Cal. Apr. 12, 2016) (ECF Nos. 164, 166) (approving claims rate of 0.7%); *In re Target Corp. Customer Data Sec. Breach Litig.,* No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving claims rate of 0.23%); *Sanders, et al. v. Ibex Global Solutions, Inc, et al.*, No. 1:22-cv-00591, ECF No. 32 (D.D.C. Mar. 10, 2023) (approving claims rate of 2.0%).

## VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED.

After finding the Settlement is fair, adequate, and reasonable, the Court must determine whether the Settlement Class can be certified under Federal Rule of Civil Procedure 23(a) and at least one prong of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class for settlement purposes only, finding that the required Rule 23(a) elements were met. ECF No. 59. At the final approval stage, the Court's preliminary conclusions remain appropriate.

Numerosity is satisfied here because Defendants' records indicate that there are 15,334 Settlement Class Members. Commonality is met because there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to

---

[13] 356 valid claims (thus far) divided by 15,334 total class members, equals a claims rate of approximately 2.3%. The claims rate will likely increase because class members who submitted deficient claims are currently being given an opportunity to substantiate their claims. If every deficient claim is corrected the claims rate would increase to approximately 3.3%.

safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on defendant's network. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class). Typicality is satisfied here because each Settlement Class Member's claim arises from the same event or course of conduct — the Cyberattack — and it gives rise to a claim of another class member's where his or her claims is based on the same legal theory. *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *2 (W.D. Mo. July 25, 2013) ("In determining typicality, courts consider whether 'the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.") (citation omitted). Likewise, adequacy is met because (i) Plaintiffs possess the same interests as the Settlement Class Members because all of them were allegedly injured in the same manner, based on the same allegedly inadequate security measures, during the same Cyberattack, (ii) Class Counsel are qualified, experienced, and have vigorously prosecuted the litigation, and (iii) Plaintiffs, as Class Representatives, vigorously prosecuted the action and secured the Settlement before the Court. *See Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009) (quoting *Paxton*, 688 F.2d at 562–63) ("The focus of the adequacy inquiry is whether '(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.'").

Furthermore, the Settlement still meets the requirements of Rule 23(b). For settlement purposes only, common questions predominate here, including questions of whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was

negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized individuals as a result of the same Cyberattack. Finally, class certification is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the 15,334 Settlement Class Members who would otherwise need to provide nearly the same, if not identical, legal, and factual arguments and evidence.

Accordingly, final certification of the Settlement Class for settlement purposes only is appropriate.

## VII.    THE NOTICE PROGRAM ADEQUATELY APPRISED CLASS MEMBERS

As the Court preliminarily found, the Notice Program satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Administrator employed direct notice, by sending the Short Notice directly to the Settlement Class Members via U.S. mail. SA, ¶ 5.2.1; KCC Decl., ¶ 6.  Through these means, the Settlement Administrator successfully provided direct notice to approximately 91%[14] of the Settlement Class. *See* KCC Decl., ¶¶ 6–8. Further, the Settlement Administrator established a publicly accessible settlement website where Settlement Class Members could obtain information regarding the Settlement. KCC Decl., ¶ 9. The Settlement Administrator posted the Notices, Claim Form, Settlement Agreement, motions filed by Class Counsel, the date of the Fairness Hearing, information about objecting to the Settlement, and exclusion information on the

---

[14] Calculated by dividing 13,946 successfully mailed notices to the Settlement Class by 15,334 total Settlement Class Members.

website. KCC Decl., ¶ 9. The settlement website has proven to be extremely useful to Settlement Class Members which is evidenced by the 32,664 page views. KCC Decl., ¶ 9. In addition, the Settlement Administrator maintained a telephonic help line, which has received 113 calls to date. KCC Decl., ¶ 10. Aside from the efforts of the Settlement Administrator, *topclassactions.com* also featured an article informing the public of the Settlement and directing them to the settlement website.[15]  As such, the Settlement Class has been kept well-informed of the details of the Settlement and their options.

Additionally, the notice approved by the Court provided to the Settlement Class was plain and easily understood. Federman Decl., ¶ 20. The Notices described the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, requesting exclusion, and/or appearing at the Final Approval Hearing. Federman Decl., ¶ 20.

Plaintiffs submit that the Notice Program issued pursuant to the Court's Preliminary Approval Order (ECF No. 59) meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

## VIII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for final approval and enter an order substantially similar to the proposed Order for Final Judgment, filed contemporaneously herewith.

---

[15] *See* Exhibit 2 of the Federman Declaration.

Dated: April 5, 2023

Respectfully submitted,

Jeffrey R. Schmitt, #52966MO
Katherine M. Flett, #68183MO
7701 Forsyth Blvd., Suite 1200
St. Louis, MO 63105
(314) 726-1000 / (314) 725-6592 (fax)
Email: jschmitt@dmfirm.com
        kflett@dmfirm.com

M. Anderson Berry (pro hac vice)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

*/s/ William B. Federman*
William B. Federman (pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and copies of the foregoing document will be served upon interested counsel electronically.

*/s/ William B. Federman*
William B. Federman